# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE HOMER LAUGHLIN CHINA COMPANY and HLC HOLDING, INC., | Civil Action No. _____ |
| Plaintiffs, | |
| v. | **ELECTRONICALLY FILED** |
| HANNA'S CANDLE COMPANY, THE BAZAAR, INC., and JOHN DOE, whose true name is unknown, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs The Homer Laughlin China Company (hereinafter "THLCC") and HLC Holding, Inc. (hereinafter "HLC") (collectively hereinafter "Homer Laughlin"), by and through their undersigned counsel, assert as follows for their Complaint for Preliminary and Permanent Injunctive Relief against Defendants Hanna's Candle Company ("Hanna's"), The Bazaar, Inc. ("Bazaar"), and John Doe (collectively, "Defendants"):

## PRELIMINARY STATEMENT

1. Homer Laughlin brings this civil action against Defendants for injunctive relief as well as money damages arising from (a) Defendants' activities constituting unfair competition under the Lanham Act and common law; (b) Defendants' unjust enrichment as a result of their tortious conduct described herein; and (c) Defendants' violations of both state and federal anti-dilution law.

## PARTIES

2. Plaintiff THLCC is a Delaware corporation having its principal place of business at 672 Fiesta Drive, Newell, WV 26050. Plaintiff HLC, the sole owner of THLCC, is a

Delaware corporation having its principal place of business at 672 Fiesta Drive, Newell, WV 26050.

3. Upon information and belief, Defendant Hanna's is an Arkansas corporation with a place of business at 2700 S. Armstrong Avenue, Fayetteville, AR 72701.

4. Upon information and belief, Defendant Bazaar is an Illinois corporation with a place of business at 1900 N. Fifth Avenue, River Grove, IL 60171.  Bazaar operates a merchandise closeout site located at:  http://www.thebazaarinc.com/, an interactive website that sells goods directly to the general public.

5. Defendant John Doe is a fictional name intended to include any and all parties involved in the sale, marketing, importation and/or distribution of the Carnaval dinnerware products described below.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this dispute under the Lanham Act pursuant to 28 U.S.C. § 1338.  The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants have, among other things, engaged in unlawful conduct by soliciting buyers for (and making sales of) their products in this judicial district.  Defendant Bazaar also maintains an interactive website – http://www.thebazaarinc.com/ – through which Bazaar conducts business with residents in this judicial district and upon which a consumer in this judicial district may purchase the Carnaval products described in more detail below.
2

**FACTUAL BACKGROUND**

**The History of Homer Laughlin and Fiesta® Dinnerware**

8. Homer Laughlin was founded in 1871 by brothers Homer and Shakespeare Laughlin as a partnership to sell pottery ware from factories located in East Liverpool, Ohio, where the brothers lived. The company opened a plant in Newell, WV in 1907 and moved its headquarters there in 1929. For over 100 years, Homer Laughlin has produced high quality, American-made china and has provided tens of thousands of jobs to the people of the Ohio River Valley. Today, Homer Laughlin is the largest company in the dinnerware industry that still manufactures its products in the United States.

9. Homer Laughlin began selling Fiesta® Dinnerware following the annual Pottery and Glass Exhibit held in Pittsburgh, Pennsylvania in January 1936. Fiesta® Dinnerware, which was re-introduced by Homer Laughlin in 1986, is among the most recognizable china in the world. Fiesta® Dinnerware has an iconic status and claims thousands of collectors, dealers, students, and historians from around the world. It is also the most collected dinnerware in the United States.

10. Homer Laughlin both sells Fiesta® Dinnerware to consumers via retailers and sells Fiesta® Dinnerware to wholesalers. Homer Laughlin also markets and sells its Fiesta® Dinnerware in the institutional and food services markets, including to hotel and restaurant chains.

**Homer Laughlin Has Spent and Continues to Spend Considerable Time, Effort, Funds and Resources In Developing the Trade Dress at Issue in This Action**

11. Homer Laughlin owns and uses inherently distinctive and unique formats and designs for (a) its Fiesta® Dinnerware and (b) the Fiesta® Dinnerware packaging (collectively, the "Trade Dress"). The Trade Dress at issue here also includes (a) and (b) considered in

combination.  The Trade Dress for the Fiesta® Dinnerware itself includes, as design features, a streamlined Art Deco appearance with signature concentric rings both at the center of pieces as well as along their rims, as shown in the photograph attached as **Exhibit A**.  The Fiesta® Dinnerware Trade Dress also includes distinctive, opaque glazes in numerous solid colors (including bold bright colors, jewel tones, and pastels) such as those shown in **Exhibits B through F** attached hereto.

12. The Trade Dress for the Fiesta® Dinnerware packaging includes, as design features, a colorful sheet affixed to the top of a white cardboard box, with a black banner at the bottom of the sheet noting different attributes of Fiesta® Dinnerware.  In the top left corner of the sheet appear the Fiesta® name and the Fiesta® logo for the product.  In addition, the sheet also depicts a mug, bowl, salad plate, and dinner plate.

13. For decades, Homer Laughlin has spent substantial time, monies and resources promoting the Trade Dress and the goods sold thereunder through product catalogs and other advertisements.

14. As a result of this marketing and promotion, the Trade Dress inherent in both the Fiesta® Dinnerware pieces and in its packaging has acquired further distinctiveness and substantial and valuable goodwill exists throughout the United States for the Trade Dress of Fiesta® Dinnerware.

15. The Fiesta® Dinnerware Trade Dress, both for the products themselves and their packaging – all of which are non-functional – are well-known in the industry and have become famous, due to their longevity and popularity.

**Defendants Unfairly Compete With Homer Laughlin**

16.     Defendants have offered for sale ceramic dinnerware products known as Carnaval dinnerware that are indistinguishable in appearance from Fiesta® Dinnerware, and which are sold in packaging nearly identical to the packaging in which Fiesta® Dinnerware is sold.  These products feature opaque glazes and the concentric ring trade dress of the Fiesta® Dinnerware.

Defendants' Carnaval products          Fiesta® Dinnerware Products



Defendants' Carnaval products         Fiesta® Dinnerware Products





6

Defendants' Carnaval products               Fiesta® Dinnerware Products





Defendants' Carnaval product            Fiesta® Dinnerware Product



17.     Although strikingly similar in appearance to Homer Laughlin's Fiesta® Dinnerware, Defendants' Carnaval product and Defendants' Carnaval packaging are inferior copies that do not come close to meeting the standards of Fiesta® Dinnerware.  The inferiority of Defendants' copy further serves to diminish the distinctiveness of the design and goodwill associated with Fiesta® Dinnerware.

18.     These products are sold, moreover, in packaging that mimics the packaging of Fiesta® Dinnerware.  For example, the Carnaval products are sold in a white box with a sheet affixed to the box, which a black banner at the bottom of the sheet noting different attributes of the Carnaval products.  In the top left corner of the sheet appears the Carnaval name and the Carnaval logo for the product.  In addition, the Carnaval sheet also depicts a mug, bowl, salad plate, and dinner plate.

Defendants' Carnaval packaging          Fiesta® Dinnerware packaging:



19. Through the sale of their Carnaval products in their strikingly similar packaging, Defendants are engaging in a systematic effort to deceive the public by unfairly competing with Homer Laughlin and its efforts to sell Fiesta® Dinnerware. Defendants' copycat activities, both with respect to the products themselves and their packaging, are willful and intentional.

20. Upon information and belief, Defendants' Carnaval products are manufactured in China.

21. Defendant Bazaar continues to offer nationwide the Carnaval products for sale online, through its website, http://www.thebazaarinc.com/. Moreover, as recently as April 2013, Defendant Hanna's has distributed Carnaval products to the Boscov's department store chain, four of which are located in this judicial district and twenty-four of which are located throughout Pennsylvania, for sales to the general public.

22.    The Carnaval line of products and its packaging projects the entire image and impression of Fiesta® Dinnerware due to the design and appearance of the Carnaval products and packaging.

23.    Defendants' attempts to sell Carnaval products to the consuming public that bear the Fiesta® Dinnerware Trade Dress, when in fact those goods are not Homer Laughlin products, are intended to deceive, and in fact actually deceive, the public into believing that the Carnaval products are identical to, or otherwise affiliated with, Fiesta® Dinnerware.

24.    Defendants have manufactured the Carnaval products and packaging to make them look identical or confusingly similar to Fiesta® Dinnerware and the Fiesta® Dinnerware packaging, and have reproduced certain non-functional elements of Fiesta® Dinnerware and its packaging in an effort to further deceive the public and damage Homer Laughlin.

25.    Significantly, three of the colors in which the Carnaval products are offered target or mimic three of the four most popular colors of Fiesta® Dinnerware, and the fourth Carnaval color targets or mimics the sixth most popular color of Fiesta® Dinnerware.

26.    Moreover, the cardboard box in which Carnaval dinnerware is sold is a clear knock-off of the Fiesta® Dinnerware packaging.

27.    The goods which Defendants have passed off on the consuming public as Homer Laughlin products do not satisfy the rigorous testing and quality control efforts which ensure the high quality of Fiesta® Dinnerware and packaging, and are not the equivalent of Homer Laughlin products.

28.    Nevertheless, Defendants have repeatedly offered the Carnaval products for sale and have thereby evinced a clear intent to trade off of, and improperly benefit from, the

substantial and valuable goodwill developed by Homer Laughlin through its Fiesta® Dinnerware and its distinctive Trade Dress.

29. Visually, the products offered for sale by Defendants under the Carnaval name, and the packaging in which they are sold, are nearly identical to the products offered by Homer Laughlin, and such infringement confuses and misleads the public. These products are neither Homer Laughlin products, nor are Defendants authorized to offer to sell any Homer Laughlin products. Examples of Defendants' attempts to sell Carnaval products are attached hereto as **Exhibits G through J**.

### Irreparable Harm and Other Damages

30. Unless and until Defendants are enjoined from infringing upon or otherwise using Homer Laughlin's Trade Dress, Homer Laughlin is being irreparably harmed as follows:

   a) Confusion of customers who intend to do business with Homer Laughlin and to purchase Fiesta® Dinnerware, but are instead provided with products that are not Homer Laughlin products or their equivalent;

   b) Damage to customer goodwill, trust, and confidence in Homer Laughlin;

   c) Disturbance of Homer Laughlin's relationships with its customers;

   d) Damage to Homer Laughlin's business reputation;

   e) Loss of confidence in Fiesta® Dinnerware due to the sub-standard quality of Carnaval goods being passed off as Homer Laughlin products; and

   f) The potential for warranty and/or other claims being filed against Homer Laughlin as a result of the defective performance of Defendants' products.

31. Moreover, if Defendants are permitted to continue to unfairly compete with Homer Laughlin, this will establish a precedent and potentially encourage others persons or

entities to engage in the same conduct, thereby causing an irreparable loss of customer goodwill associated with the Trade Dress and the products sold thereunder.

## COUNT I

## UNFAIR COMPETITION UNDER
## SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

32. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 31 of the Complaint as if each was set forth herein.

33. Defendants are in the business of selling Carnaval products.

34. The products sold or offered to the public by Defendants have been designed by Defendants to duplicate or closely replicate the inherently distinctive Trade Dress of Fiesta® Dinnerware and its packaging.

35. The continued use of Homer Laughlin's Trade Dress in the sale of goods by Defendants is likely to cause mistake and confusion in the marketplace and to cause purchasers to believe that Defendants' goods are those of Homer Laughlin.

36. The use by Defendants of Homer Laughlin's Trade Dress in the sale of their goods constitutes unfair competition under the Lanham Act.

37. Defendants are deliberately attempting to trade upon the goodwill of Homer Laughlin by selling and advertising and/or intending to sell and advertise their goods as the goods of Homer Laughlin.

38. The conduct of Defendants constitutes fraud and deceit upon the consuming public of the United States.

39. Said conduct has resulted and will continue to result in the loss of Homer Laughlin's goodwill, and has caused and will continue to cause Homer Laughlin irreparable injury.

40. Unless enjoined by this Court, Defendants' acts will continue to irreparably damage Homer Laughlin by causing losses of sales, profits, business, reputation, and goodwill, which losses are impossible to accurately calculate. Thus, Homer Laughlin has no adequate remedy at law.

## COUNT II

## COMMON LAW UNFAIR COMPETITION

41. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 40 of the Complaint as if each was set forth herein.

42. Defendants' sale of the Carnaval products is likely to cause mistake and confusion in the marketplace and to cause purchasers to believe that Defendants' goods are those of Homer Laughlin. Potential and actual consumers are likely to believe, and likely to be deceived into believing, that the products offered by Defendants are approved, authorized and/or licensed by Homer Laughlin.

43. Defendants are therefore unnecessarily creating confusion between Homer Laughlin's goods and their imitation Carnaval goods.

44. Defendants' conduct further creates the impression that Homer Laughlin is responsible or accountable for the quality of the goods sold or offered for sale by Defendants. Defendants' conduct also harms the value of Fiesta® Dinnerware and the value of Homer Laughlin's reputation for dinnerware products of the highest quality, a value acquired by Homer Laughlin as a result of its substantial expenditure of money, effort and service to customers. Through its actions, Defendants are inducing the purchase of imitation Fiesta® Dinnerware and are thereby obtaining benefits properly belonging to Homer Laughlin.

45. Defendants' conduct as described above constitutes unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

46. Defendants committed the acts described with notice of Homer Laughlin's rights and with the intent to cause confusion, mistake and deception on the part of the consuming public.

47. Unless enjoined by this Court, Defendants' acts will continue to irreparably damage Homer Laughlin by causing losses of sales, profits, business, reputation, and goodwill, which losses are impossible to accurately calculate. Thus, Homer Laughlin has no adequate remedy at law.

## COUNT III

### UNJUST ENRICHMENT/QUANTUM MERUIT

48. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 47 of the Complaint as if each was set forth herein.

49. Defendants have misused Homer Laughlin's Trade Dress to derive personal profit and otherwise have been enriched as a result of the benefits and goodwill which flow from Homer Laughlin's Trade Dress.

50. It would be unjust for Defendants to retain the profits, gains, and other benefits that they have derived from their illegal use of the Trade Dress.

51. Defendants should be required to pay to Homer Laughlin the value of the benefits gained through the unauthorized and illegal use of Homer Laughlin's Trade Dress.

### COUNT IV

### DILUTION UNDER FEDERAL LAW

52. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 51 of the Complaint as if each was set forth herein.

53. Homer Laughlin's Trade Dress is famous. Defendants' use of Homer Laughlin's Trade Dress has and will continue to dilute the distinctiveness of and tarnish Homer Laughlin's famous Trade Dress in violation of the Federal Dilution Act, 15 U.S.C. § 1125(c).

### COUNT V

### DILUTION UNDER PENNSYLVANIA LAW

54. Homer Laughlin incorporates each of the assertions contained in Paragraphs 1 through 53 of the Complaint as if each was set forth herein.

55. Defendants' use of Homer Laughlin's Trade Dress has and will continue to dilute the distinctiveness of and tarnish Homer Laughlin's famous Trade Dress in violation of the anti-dilution law of the Commonwealth of Pennsylvania, 54 Pa. C.S. § 1124.

### PRAYER FOR RELIEF

WHEREFORE, Homer Laughlin demands that judgment be entered in its favor and against Defendants with respect to both Counts as follows:

1. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c), 54 Pa. C.S. § 1124, and Pennsylvania common law;

2. That Defendants be ordered to destroy all Carnaval products and packaging in their possession;

3. That Defendants be preliminarily and thereafter permanently enjoined from using Homer Laughlin's Trade Dress, including but not limited to any sale of Carnaval products;

4. That Defendants be preliminarily and thereafter permanently enjoined from interfering in any way with Homer Laughlin's contractual and business relations with its customers or potential customers and/or its other distributors, dealers, or other commercial relationships;

5. That Defendants be preliminarily and thereafter permanently enjoined from effecting assignments or transfers, or forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction;

6. That Defendants be preliminarily and thereafter permanently enjoined from manufacturing, having manufactured, selling, distributing, and marketing products which are designed to infringe upon the Homer Laughlin Trade Dress, including but not limited to the Carnaval products;

7. That Defendants be required to recall any and all advertisements, product catalogs, or marketing materials which infringe upon Homer Laughlin's Trade Dress within thirty (30) days of this Court order;

8. That Defendants be preliminarily and thereafter permanently enjoined from creating, printing, and disseminating any new advertisements, product catalogs, or marketing materials which infringe upon Homer Laughlin's Trade Dress;

9. That Defendant Bazaar be required to remove all references to Carnaval products, including all depictions and/or descriptions of such products, from its website – http://www.thebazaarinc.com/ – or any other website maintained by Defendants within thirty (30) days of this Court's order;

10. That Defendants be required to instruct all of their customers to cease marketing and/or selling the Carnaval products;

11.   That, upon the entry of a permanent injunction, Defendants be required to contact every customer that has received a product catalog or other advertisement from Defendants in order to inform such customers that (a) they (Defendants) are not Homer Laughlin representatives and are not authorized to sell Homer Laughlin products, and (b) that the products offered by Defendants are not Homer Laughlin products. Defendants shall copy counsel for Homer Laughlin on each and every correspondence to this effect;

12.   That each Defendant be required to disclose the name, address and contact information for each and every source of Carnaval products that it received;

13.   That Defendants be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by the Defendants to comply with this Court's injunction and the dates of such actions;

14.   That, upon the entry of a permanent injunction, Defendants be required to provide an accounting of all sales, revenues and fees received by them for products distributed, marketed or sold by them (and the receipts, gross profits and expenses relating thereto) using Homer Laughlin's Trade Dress from the date of first use by Defendants of such Trade Dress until disassociation is complete;

15.   That Homer Laughlin be awarded damages in the amount of Defendants' profits, gains or advantages of any kind resulting from Defendants' unfair competition;

16.   That Defendants be required to pay damages to Homer Laughlin for injuries sustained by Homer Laughlin as a result of Defendants' dilution of Homer Laughlin's Trade Dress;

17.   That all damages under the Lanham Act be trebled;

18. That Defendants be directed to pay all of Homer Laughlin's costs connected with this action, including reasonable attorneys' fees, filing fees and other costs as authorized by the Lanham Act; and

19. That Homer Laughlin be given such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable to a jury in this case.

DATED this 6th day of May, 2013            **BUCHANAN INGERSOLL & ROONEY PC**

/s/ Charles B. Gibbons_____
Charles B. Gibbons (PA I.D. No. 08284)
Michael L. Dever (PA I.D. No. 46194)
Christopher A. Amar (PA I.D. No. 309707)
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
charles.gibbons@bipc.com
michael.dever@bipc.com
christopher.amar@bipc.com
Telephone:  (412) 562-8800
Fax:  (412) 562-1041

OF COUNSEL:

Andrew J. Cornelius (PA I.D. No. 30213)
**ANDREW J. CORNELIUS, P.C.**
305 Mt. Lebanon Boulevard, Suite 205
Pittsburgh, PA 15234
acornelius@ajciplaw.com
Telephone:  (412) 571-9552
Fax:  (412) 571-9553